Labaijve, J.
We think it is necessary to give a substantial extract of the petition, in order to show the cause or ground of action.
The petition represents that on the 29th January, 1861, by notarial act, the defendant, widow of Edward Shiff, deceased, in her own name and behalf, and in her capacity of natural tutrix of her minor child, Edward Shiff, the only issue of her marriage with her late husband, guaranteed the payment of certain notes and obligations, mentioned and described in an account annexed to said act, in proportionable payments, during the years, 1861, 1862, 1863, 1861 and 1865, at the end of which periods, all said notes and obligations, and the interest thereon, should become due and exigible from said Mrs. Shiff, in her capacities aforesaid; and by said act it was also agreed, that your petitioner, Arthur Shiff, should receive an annual salary of 000 per year, as clerk of the said Mrs. Shiff, until the final payment and settlement of the obligations aforesaid, all which will appear by said act, and the documents annexed for reference and part hereof. That said Mrs. Shiff has failed to comply with her said agreement in great part, having only paid such instalments and-interest as are stated iu the document “A,” hereto annexed; that petitioners have frequently made demand of the defendant for the payment of said instalments as stipulated in said act, but that she has utterly refused to recognize the validity of said act.
Petitioners state that they now and here make proffer of said notes and obligations to the defendant, upon her compliance with said obligations in said act assumed; that they have complied with all their obligations contained in said act, an'l that Arthur Shiff has performed his duties as clerk, and was always and is still ready to do his duties as such, and that *270 he has received his salary up to the 30th November, 1862, and the balance is still due.
The petition concludes by praying, that the said defendant be decreed in solido, personally and as tutor, to pay the amount of said notes and obligations, with interest, subject to a deduction of one-sixteenth part, coming to Mrs. Shiff, as representative of her deceased husband, as heir of Shiff, and real estate sold, and also to pay Arthur Shiff his salary, as clerk, at the rate of $4,000 per annum, from the lit November, 1862, until the final settlement of the claims aforesaid, with interest, from the periods when said salary became due.
The defendant excepted to the petition, on the ground that plaintiffs show no cause of action; that they allege that the obligation sued upon is a contract of suretyship, and that should that be the case, which is denied, she would, under no circumstances, be accountable to plaintiffs until the obligations became due, and remained unpaid by the principal obligors, and that it is not alleged that said obligations are either due or unpaid by them; that the allegations in the petition are vague and uncertain, and that no specific demand is made against her, and she cannot frame her answer to them. ,
She prays to be hence dismissed.
The Court overruled this exception, and we think properly. The petition charges, that it was agreed that the amount of the notes should be paid proportionably during five years, and that at the end of which all said notes and interest thereon should become due and exigible from said Mrs. Shiff, in her capacities aforesaid. This is an absolute promise to pay. The amount is sufficiently certain by the allegation, that the notes sued upon are described in an account annexed to the act, all of which will appear by said act, and the documents annexed for reference and part hereof.
The defendant, answering on the merits, denied that she ever made any contract whatever with the plaintiffs; that if she ever made any contract, the same is void, because the amount of money agreed to be paid to Arthur Shiff was usurious interest in disguise; and because Arthur Shiff has not complied wi’h the terms thereof; that said contract, if any was made, which she denies, is null and void, and was so from the confection thereof, because there was no consideration for the same, and that it was without a cause.
As tutrix, she says that the contract was null and void for the reasons above stated; that there was no cause or consideration for such a contract, if any was made, which she denies; she avers that her late husband was the mandatary of the plaintiffs; that as such he invested their means; that the investments which he made of their funds were kept separate, and were never mixed with his own; she avers that if any obligation ever existed between her late husband and the plaintiffs, it was the obligation of principal and agent, not debtor and creditor, and that at the time of his death, nor at any time was her husband in any manner indebted unto the plaintiffs.
She alleges that the alleged contract never had any foundation in law; that when she signed it, she signed it as natural tutrix of her minor child, and that no tutrix, under the laws of Louisiana, is authorized to contract *271 any obligation on the part of her ward, or to become the surety of any person or persons; that her duties are confined to the administration of the property of her ward, and not to the creating of debts against him; and that this she is not entitled to do, under any circumstances, save fur his actual support, and that the sanction of a family meeting, and the homologation of the proceedings thereof by the Court, can give no force or effect to a contract, which, by law, she was prohibited from making.
Upon these pleadings the parties went to trial, and a judgment was rendered in favor of the defendants, and the plaintiffs took this appeal.
It is shown by the petition, that Widow Edward Shiff is sought to be made personally liable in solido, and as natural tutrix of her minor child, for the whole amount claimed and represented by the notes sued upon. The cause of action is said to be founded upon, and the liability of the defendant in his said capacities, to result from an act passed between these parties, before Theodore Guyol, Notary Public, on the 29th January, 1861, In that act Arthur Shiff, one of the plaintiffs, acted for himself, and as agent of all his co-plaintiffs. The first appearance is by the defendant, and the notary states:
“ Personally came and appeared Mrs. Emily L. Andrews, widow of the late Edward Shiff, deceased, of this city, and herein acting in her own name and behalf, as well as in her capacity of natural tutrix of her minor child, named Edward Shiff, the only issue of her marriage with her said late husband. ”
After naming the plaintiffs, the act states that the appearers declared that the said late Edward Shiff, in his lifetime, acted as the agent and attorney in fact of the said Arthur Shiff, and his several constituents, and as such received for their account, by way of investments of their funds, sundry promissory notes and obligations, for the payment of money executed by planters doing business with said Edward Shiff; and it is further déclared that, whereas said notes and obligations have been delivered up by the succession of the said Edward Shiff to the said Arthur Shiff, in his above capacities, a detailed account of which notes and obligations is hereunto annexed and made a part of this act.
Now the said appearers have agreed and contracted, as follows, to-wit: “ The said Mrs. Shiff hereby, in the name of the succession of her late husband, guarantees the payment of the notes and obligations described in the annexed account, in the manner and at the periods following, to-wit: (Here are the proportionable payments which were to be made in 1861, 1862, 1863, 1864 and 1865.)
It is further declared in the act:
That in consideration of said guarantee and mode of payment, the said Arthur Shiff binds himself and his constituents not to enforce the said guarantee beyond the proportions specified, nor in any case exact payment from any of the planters, whose notes are the subject of this act, •without the previous assent in writing of the representatives of the succession of the said Edward Shiff, deceased. He further binds himself and his constituents not to part with the said notes, but to hold the same until the full payment thereof, and upon the payment of the same, or any of them, to subrogate the succession of the said late Édward Shiff, to all the rights, *272 claims, privileges and mortgages accessory thereto, and to deliver the said notes on payment to said succession.
It was further stipulated, that the said succession should have the right to pay in anticipation of the term fixed, all or any of the said notes, it being the intention and desire of the representatives of the said succession to be relieved from the guarantee aforesaid as speedily as possible.
'It was also agreed, that said Arthur Shiff or his constituents, should not, during the said guarantee, induce any of the planters doing business with the late firm of Edward Shiff & Co., to discontinue their business either with the succession or with the new firm to be established for liquidating the affairs of the said succession, which said new firm should 'take no new business with other planters than those doing business with the said succession; but should limit its business solely to the liquidation of the affairs of said succession in the shortest delay.
It was further agreed, that in consideration of the promises, and the .advantage to the succession arising from the funds of plaintiffs, being left with the said succession, the said Arthur Shiff was to be engaged as clerk in the pew firm as long as the debt due to the plaintiffs by the planters remained unpaid, at a salary of $-1,000 a year, until one-half of said debt was paid, and thereafter a salary of $3,000 a year, until the remainder was paid. ”
Subsequently, in February following, this act was made, acted on, ratified and approved by a family meeting and the Judge, as a compromise.
Between the defendant and her deceased husband, there existed no matrimonial community, they being separated in property by their marriage contract; therefore, the whole commercial assets and effects as well as the debts and charges, were of the estate proper of said deceased.
We are going to examine the various grounds upon which this case turns:
1. The first position taken in argument, but not as a cause of action, for no such allegation is made in the petition or in the notarial act, passed on the 29th January, 1861, is, that Edward Shiff, up to the time of his death, had been plaintiffs’ agent for many years, and having in his hands and under his control for them, hundreds of thousands of dollars, which he- placed at interest among his customers, whose crops he was selling, became responsible towards plaintiffs for such loans, and that his estate is bound for the same, and that this made the validity of the notarial act.
Plaintiffs’ counsel state in their brief:
“ We presume that it will not be contended that the agreement sued upon is valid, if at the time of his death Edward Shiff was liable to the plaintiffs for the obligations referred to therein. We, therefore, in the first place, propose to demonstrate that liability. ”
Little further, upon this same point, they observe:
“ That Edward Shiff himself knew that he was personally responsible to his relations for the paper transferred to them, executed by his planters. we think is equally demonstrable. ”
.The facts upon, which plaintiffs rely to fix this liability and responsibility of E. Shiff, are that the notes referred to in the agreement were given by planters doing business with the house of Shiff; that the mortgages, *273 given to secure their payment were executed in favor of said house, and represented loans made by said firm to their customers, many of whom bound themselves in the act of mortgage to send their crops to Shiff; that the paper was all passed through the books of the house to the debit of the note account of the respective planters, and to the credit of bills payable, showing they were the property of the house, and that E. Shiff charged a commission to planters as endorser of some of said notes, which figured to the credit of bills payable in the journal and ledger.
We must test this liability of Shiff, in the same manner as if the suit were now brought against the estate upon that ground. The rule is, that a plaintiff must make out a clear case to recover. From the above facts and circumstances, and the relation of the parties, we must say that we are of opinion that plaintiffs have failed to show (or demonstrate) that Edward Shiff became responsible for the notes in questions, and that the act called compromise can derive no force and no vitality from that source.
The money was given by plaintiffs to Shiff, as their agent, to be loaned out at interest. What difference did it make whether Shiff loaned it to his customers or others? If anything, it was to their advantage. For Shiff, receiving the crops of his planters, had a better opportunity to receive payment. His taking mortgages in his own name did not make him the owner of the notes,, which, being delivered to his principals, carried the mortgage with them. His charging the notes in his books as his property, did not make Shiff the owner as between him and his principals; but he was owner as regarded his customers, who knew no one but him as their creditor. His charging commission to his customers, as endorser of such notes, did not make him liable as such towards his principal, when in fact he had not endorsed; this charge was a matter between him and his customers, who could well object to pay such a charge; but the question is, did he endorse the notes? No such thing is pretended.
There can be no responsibility attached to Edward Shiff in this case, unless it arise from his acts of agency or from a contract of suretyship. In the first case, he is not charged in the petition or in the act called compromise, with non-performance of his duty, or with fault or neglect. And on the 29th January, 1861, the defendant, Widow Shiff, acting as tutrix of her child, rendered an account of the agency of her deceased husband to the plaintiffs, and delivered over to them the notes and obligations sued upon, and they received them without any reservation of recourse against the estate for maladministration or otherwise. Therefore no liability is shown on the estate upon that score in support and as a motive of the notarial act sued upon. In the second case, it is contended that E. Shiff, having charged a commission to the planters, became guarantee for the notes when he negotiated them. ' This is nothing more nor less than a suretyship under our Civil Code.
“Art. 3004. Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not.”
Then the agreement to become surety is a contract requiring the consent of two parties — the creditor and'the surety.
Here, E. Shiff aeted as agent, in negotiating the notes; how could he *274 have stipulated from himself individually, a promise to become surety for the debtors of the notes? It was a thing legally impossible. There could not have been that concurrence of two minds essential to the contract. 6 L. 407. 2 B. 556. Therefore there was no suretyship on the part of Shiff, and the aot called compromise has nothing here to stand upon.
2. The next question is, as regards the liability of the minor, and the succession of E. Shiff to pay the notes sued upon according to the stipulations contained in the notarial act of the 29th January, 1861. It is necessary to determine first the nature of this notarial act, and whether it contains a transaction or compromise or a suretyship on the part of the succession and the minor.
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a law suit, adjust their differences by mutual consent, in the manner which they agree on. C. C. Art. 3038.
In this act there is nothing said about a suit being pending, or to be brought, or difference, or difficulty existing between the parties. This act on its face does not purport to be a transaction or a compromise, it simply states, as we have related above, that said Edward Shiff, in his lifetime, acted as the agent of plaintiffs, and, as such, received for their account, by way of investments of their funds, sundry promissory notes and obligations for the payment of money, executed by planters doing business with said Shiff, and that, whereas said notes and obligations have been delivered up by the succession of the said Edward Shiff to said plaintiffs, a detailed account of which notes and obligations is hereunto annexed.
Now the said appearers have agreed and contracted as follows, to-wit:
The said Mrs. Shiff hereby, in the name of the, succession of her Late husband, guarantees the payment of the notes and obligations described in the annexed account, in the manner and at the periods following:....
It is not pretended in said aot, that the succession of Edward Shiff could or might have been made liable for the payment of those notes, and that there was a contest about it; these are simple notes due by third persons to the plaintiffs, and with,which the succession of Edward Shiff has nothing to do, and there is, nothing to give the denomination of compromise to this act, which is substantially an act of suretyship in regard to those notes, and nothing else.
The name of compromise, given to this act in the proceedings before the family meeting and the Judge, cannot make it so inlaw, when, according to Merlin, its substance shows it to be something else, to-wit: an aot of suretyship. The distinction here is important, for if it had been a compromise carried out according to law, the minor and, as a consequence, the succession, might have been bound. C. C. Art. 3068.
3. We now come to the question of sureties of Mrs. Edward Shiff and the succession of E. Shiff, in regard to the payment of said notes and Obligations, and, whether Mrs. Shiff contracted in both capacities, as tutrix and in her own name, or in one capacity alone; this necessarily involves a question of interpretation or construction of the said notarial aot.
*275 From the whole context of the said act, we are of opinion that Widow Edward Shiff acted as natural tutrix, and in the name of the succession, in guaranteeing the payment of said notes and obligations, and not in her individual capacity; it is true, that the act commences by declaring that she appears in her own name and as natural tutrix; but the clause of guarantee is restricted to the succession, thus:
“The said Mrs. Shiff hereby, in the name of the succession of her late husband, guarantees the payment of the notes and obligations.”
If, therefore, she guaranteed those notes in that name, she did not do so in any other name. Inclusio unius est exclusio alierius, and all the subsequent clauses relating to said notes, carry out the idea that the estate was intended as a guarantee, and no one else.
In the next following clause, thus:
“ The plaintiffs bound themselves not to enforce the said guarantee beyond the proportions specified, nor in any case exact payment from any of the planters, whose notes are the subject of this act, without the previous assent in writing of the representatives of the succession of the said Edward Shiff, deceased.’‘
‘On the payment of said notes, or any of them, plaintiffs bound themselves to subrogate the succession of the said Edward Shiff, to all the rights, claims, privileges and mortgages accessory thereto, and to deliver the said notes on payment to said succession.”
It was also stipulated in the act, that the succession (not Mrs. Shiff) should have the right to pay in anticipation said notes, it being the intention and desire of the representatives (not of Mrs. Shiff) of the said succession, to be relieved from the said guarantee as speedily as possible; then it was in contemplation of the parties that the succession was the guarantor.
Throughout, the succession is considered as the surety; the payment of the notes would not be required by plaintiffs previous to certain periods, without the written consent of its representatives (not of Mrs. Shift's.)
On payment of the notes the succession was to be subrogated, (and not Mrs. E. Shiff) and the notes were to be delivered to the succession (and not to Mrs. Shiff.) Mrs. Shiff was not thought of, and looked to per* Bonally; the succession was in view all the time, in relation to these notes.
Having determined that Mrs. Shiff, in guaranteeing the payment of said notes, acted in the name of the succession, and as natural tutrix of her minor child, the next question arises: are the minor and the succession bound by such a guarantee, admitting that the tutrix was authorized by family meeting and the Judge to do so?
The general rule is, that a tutor can do nothing affecting his ward’s property or rights unless authorized by law, and in the manner pointed out.
We know of no law authorizing a tutor to bind his pupil as surety; and tve have been referred to none.
This act of suretyship is a mere nullity, and can have no effect either against the minor or against the succession of Edward Shiff, and Mrs. Shiff did not bind herself personally.
*276 As to the claim of Arthur Shiff, for services rendered as clerk, we are of opinion that he has failed to make out a clear case.
Upon the whole, we are of opinion that our learned brother below, has made a proper application of the law to the facts of the case.
It is therefore ordered and decreed, that the judgment appealed from be affirmed, with costs.